In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-25-00013-CV

**GAIL FRIEDMAN, JESSE SHOOTER,
AND RACHEL TAMURA, Appellants**

**V.**

**ADRIENNE MURPHREY, INDEPENDENT EXECUTRIX
OF THE ESTATE OF LOIS SHERBERT SHOOTER, Appellee**

_____

**On Appeal from the Probate Court No. 1
Montgomery County, Texas
Trial Cause No. 23-33580**

_____

**MEMORANDUM OPINION**

This appeal involves a dispute about the disposition of a particular investment account under Lois Sherbert Shooter's (hereinafter "Lois") Last Will ("Lois's Will or "the Will") (admitted to probate on September 29, 2023). More specifically, Appellants, Gail Friedman, Jesse Shooter, and Rachel Tamura (collectively "Appellants" or "Plaintiffs" or singularly "Gail," "Jesse," and "Rachel"), contend that the trial court erred when, after a bench trial, it declared that the investment

account passed pursuant to the Residuary Clause in Lois's Will rather than to them under Article II. B. - Specific Gift provision in Lois's Will. In one issue, Appellants contend that there is legally and factually insufficient evidence to support the trial court's judgment. For reasons explained herein, we affirm.

Factual and Procedural Background

Original Petition

After the Will was admitted to probate, Gail Friedman, Jesse Shooter, and Rachel Tamura filed an Original Petition against Adrienne Murphrey (hereinafter "Adrienne" or "Appellee"), Independent Executrix of the Estate of Lois Sherbert Shooter, seeking a declaratory judgment regarding the disposition of Lois's Investment Account, which they alleged would impact in excess of one million dollars of the estate. According to the Petition, after marrying Lois, John Josiah Shooter (hereinafter "Josiah") included Lois on his investment account and his son-in-law, Steve Friedman (hereinafter "Steve"), and later Josiah's grandson Jeremy Shooter (hereinafter "Jeremy"), managed the investment account. Plaintiffs alleged that at the time of Josiah's death in 2014, the account was under the management of Steve and Jeremy at Wells Fargo. In 2017, Steve and Jeremy moved to Raymond James, which they contend prompted Lois to transfer the account to Raymond James. In early 2022, Plaintiffs allege the account followed them again to Silverleaf Wealth Management. They further allege that on November 7, 2018, Lois executed a will

2

with two bequests: personal items to her residuary beneficiaries and a financial account to named beneficiaries or, if they predeceased Lois, to their descendants. The investment account was identified in the Will as Raymond James account ****M386, and in her Will, Lois had a specific bequeath of the account equally to Gail Friedman, John Jay Shooter, and Bill R. Sherbert, or, if they predeceased her, to their descendants, per stirpes.

Plaintiffs allege that Gail Friedman and John Jay Shooter were Josiah's children, and Bill R. Sherbert was Lois's brother. On February 10, 2022, Lois transferred the Raymond James Account to Silverleaf Wealth Management, after Steve and Jeremy left Raymond James to go to work for Silverleaf Wealth Management. Lois executed an "Account Transfer" form, moving Account ****M386 to the custody of LPL Financial ("LPL"), which Plaintiffs allege provides back-office and securities holding services for Silverleaf Wealth Management. The transfer was an "In Kind" transfer, moving all assets from Raymond James to LPL. The Plaintiffs allege that the Raymond James account was not "adeemed" and the specific bequest in II. B. of Lois's Will controls the LPL account because the subject matter of that specific bequest did not change, and it only underwent an administrative change in brokerage. In the Petition, the Plaintiffs alleged that Lois's Will clearly articulated that the Account assets should pass directly under II. B. of the Will.

3

<u>Answer & Counterclaim</u>

The Executrix of the Estate filed an Answer and Counterclaim, denying the allegations made by the Plaintiffs and seeking a declaratory judgment from the trial court that declared the LPL Financial Silverleaf Wealth Management Account ****2922 passes pursuant to the Residue clause in Article III of the Last Will and Testament of Lois Sherbert Shooter.

<u>Bench Trial</u>

The parties agreed to have the case tried to the Court and for an expedited trial setting. The bench trial was held on October 21, 2024. The defense agreed to Plaintiffs' exhibits 1-6, and 16, which were preadmitted. The Plaintiffs also agreed to the admission of defense exhibits 1-14 which were preadmitted.

After opening statements, the Plaintiffs called Steve Friedman and Jeremy Friedman as fact witnesses, and James Michael Young to testify about attorney's fees incurred by the Plaintiffs. The defense called two witnesses, James Stilwell and John Dagley, who testified about attorney's fees incurred by the defendant.

The parties stipulated that Lois died on June 13, 2023, at the age of 87. Lois's Will is dated November 7, 2018, and it was admitted to probate on September 29, 2023. Lois had no children of her own, but her husband, Josiah, had two children (Gail Friedman and John Jay Shooter) at the time Lois and Josiah married. Gail (one of the plaintiffs) is married to Steve Friedman, and they have a son, Jeremy

4

Friedman. Lois had a brother named Bill Sherbert, who predeceased Lois, and he had several daughters, who are Lois's nieces, including Appellee Adrienne Murphrey, the Executor of Lois's Will. The residuary beneficiaries under the Will are Lois's nieces, the daughters of her brother Bill Sherbert. John Jay Shooter, Josiah's son, died in 2021 and predeceased Lois, and his descendants are Jesse Shooter (hereinafter "Jesse") and Rachel Tamura (hereinafter "Rachel") (two of the three plaintiffs).

According to the testimony provided by Steve, Josiah died in 2014, but before his death, he and Lois jointly owned an investment account that Josiah's son-in-law Steve and grandson Jeremy managed. Initially the investment account was with Wells Fargo when Steve and Jeremy worked for Wells Fargo. In 2017, Lois moved the investment account and her IRA account to Raymond James, when Steve and her grandson Jeremy left Wells Fargo and began working for Raymond James Investments. The Raymond James's account was identified as having an account number of "196WM386" for "the Investment Account."[1] In January of 2022, Steve and Jeremy left Raymond James and began working with Silverleaf and LPL.

---

[1] According to account statements in the record, the Raymond James Investment Account value included stocks and cash in excess of two million dollars as of January of 2022, and Lois's IRA account had a value over $350,000.

In January of 2022, Lois opened a TOD Account at LPL styled as the "Lois TOD Account ****2922" (LPL Lois TOD Account). On February 10, 2022, Lois signed a "Transfer on Death Account Agreement – Non-Retirement" for the LPL Lois TOD Account. In the Transfer on Death Account Agreement – Non-Retirement, Lois named her brother, Bill Sherbert, as the sole beneficiary to whom the LPL Lois TOD Account should be payable at her death. On February 10, 2022, Lois signed an Account Transfer authorization for the transfer of the assets from the Raymond James Account ****M386 into the LPL Lois TOD Account ****2922. In February and March 2022, the assets in the Raymond James Account were transferred to the LPL Lois TOD Account "in kind." The monthly statements that Lois received from LPL identified the LPL Lois TOD Account as "Lois TOD" in the upper right-hand corner and as a "TOD ACCOUNT" in the address block. The account manager of the LPL Lois TOD Account is listed on the statements as "Jeremy Friedman" (Lois's step-grandson). Additionally, when Lois set up her "TOD Account" at LPL, she received a letter dated January 27, 2022 from LPL Chief Customer Care Officer & Managing Director discussing Lois's investment account and a summary of the account information, again confirming it was a TOD account, showing Lois S. Shooter as the primary owner and the TOD Beneficiary as "Bill Sherbert."

6

The parties agree that the assets in the Raymond James's account were transferred "in-kind" by Lois to the LPL account, which is also identified in Plaintiffs' Exhibits 1, 3, and 6 and is called the "Lois Shooter TOD account ending in 2922."

Steve testified that he is a financial advisor for Silverleaf Wealth Management, and he lives in Omaha, Nebraska. He has been married to Gail for 49 years. Steve's son Jeremy has worked with Steve since 2010 or 2011, and Jeremy also works at Silverleaf. According to Steve, Lois had no children, and she was married to his father-in-law, Josiah, who had two children, Gail (Steve's wife) and John Jay Shooter. Josiah was a landscaping contractor. He and his twin brother started their business in Nebraska, then moved to California, and they were very successful, financially. Eventually, Josiah moved to the South Texas area, and he met Lois several years before they were married in approximately 1990. According to Steve, he had a good relationship with Lois and Josiah. Before Lois and Josiah were married, Steve managed Lois's personal IRA rollover account. And he also managed Josiah's individual investment account. After Josiah married Lois, Josiah put the investment account into a joint tenancy with Lois. And upon the death of Josiah in 2014, the investment account was the sole property of Lois.

Steve testified that when the investment account was with Raymond James it was not set up as a transfer on death account, but when it was moved by Lois from

7

Raymond James to LPL, it was set up as a "TOD" account, and under the payable on death provision in the LPL agreement, on Lois's death, the beneficiary was listed as Lois's brother, Bill Sherbert, if he survived her. Steve testified that he had no idea Lois had set up the LPL investment account as a TOD account, which was payable to her brother, until the litigation started. Steve further testified that an administrative assistant would have been the person who prepared the paperwork and sent it to Lois, which Lois signed through DocuSign. Steve agreed that the first time he saw Lois' Will was in November 2023, after her death.

On cross-examination, the defense attorney asked Steve if he was aware that in May of 2023 the LPL statements reflect that the stocks that had been in the Raymond James account were all sold and that as of May of 2023, the stocks and securities in the LPL account at the time of Lois's death were different than the stocks and securities that had been in the Raymond James account. Steve did not recall that but when asked about specific entries on the May 2023 statement from LPL, he agreed that there were sales and purchases of over 1.9 million before her death.

Jeremy Friedman testified that he is a financial advisor for Silverleaf Wealth Management and Silverleaf uses LPL as the custodian of its accounts. Jeremy initially began working with Steve when they were both at Wells Fargo, and then

8

they moved to Raymond James, and in 2022 they moved to Silverleaf Wealth Management.

The trial court noted on the record that Plaintiffs' Exhibit 3 reflects Lois had an agreement with LPL setting up the LPL investment account as a TOD account, and she named her brother as the beneficiary on death, if he survived her. Further the agreement shows that Lois signed the agreement on February 10, 2022, and the trial court stated:

> "Whether she understood the nature of this, whether she intended to have a TOD designation, whether she intended all those things seems to me to be immaterial when I have a contract that she signed where she designated someone. She designated her brother. She provided his date of birth, and she says 100 percent. That's all on page 1 of Plaintiffs' Exhibit 3. So I know that he's predeceased. I understand that it doesn't go to him; it doesn't go to his heirs. I'm with you on that. But on this question of whether there was a TOD designation, your evidence shows me there was."

According to Jeremy, Silverleaf required that every account must have a beneficiary designation unless it is an account that cannot have one. Jeremy testified that in the summer of 2022, he did not know the account had already been set up with a TOD, and he called and asked Lois if she wanted to "add a TOD," and she told him "No. The Will will handle that."

Lois's Will

In 2018, when Lois executed her Will, she specifically included under Article II., entitled "Specific Gift," subparagraph B. which states as follows:

9

**B. Gift of Raymond James Account.** I give all of my interest in my Raymond James and Associates account ending in ****M386 in equal shares to GAIL ANN FRIEDMAN; JOHN JAY SHOOTER, and BILL R. SHERBERT, provided, however, no such gift shall be made if such account does not exist on the date of my death; provided, further, I understand that such account may pass outside the provisions of my Will if, for instance, I am holding such account as joint tenants with rights of survivorship with one or more other persons or if such account is payable on death to one or more named beneficiaries. If GAIL ANN FRIEDMAN, JOHN JAY SHOOTER or BILL R. SHERBERT fails to survive me, the gift to such individual shall instead pass to the descendants of such individual who survive me per stirpes; provided, further, if no descendant of such individual survive me, the gift shall lapse.

Additionally, Article III. of the Will is entitled "Residue," and it states as follows:

I give all of the residue of my estate to BILL R. SHERBERT. If BILL R. SHERBERT fails to survive me, I give all of the residue of my estate to BILL R. SHERBERT's descendants who survive me per stirpes. If all of the beneficiaries listed above fail to survive me, then I give all of the residue of my estate to my heirs.

<u>Final Judgment and</u>
<u>Findings of Fact and Conclusions of Law</u>

Final Judgment

On October 21, 2024, the trial court signed a Final Judgment and ordered that Gail Friedman, Jesse Shooter, and Rachel Tamura take nothing on their claims and causes of action. The trial court also ordered that the LPL Financial "Lois TOD" Account ****2922 passes under the residuary clause in the Last Will and Testament of Lois Sherbert Shooter dated November 7, 2018. Additionally, the

trial court denied the request for attorney's fees, and ordered that Gail Friedman, Jesse Shooter, and Rachel Tamura, jointly and severally, pay all costs of court as determined by the county clerk in a bill of costs, for which let execution issue, together with post judgment interest on all amounts awarded herein at the rate of 8.5% per annum from October 22, 2024 until the judgment is satisfied in full. Finally, the trial court ordered that all other relief not expressly granted was denied, and the court declared it to be a Final Judgment as to all claims and parties and is appealable.

Findings of Fact and Conclusions of Law

Upon the request of Plaintiffs, the trial court issued Findings of Fact and Conclusions of Law as follows:

**Findings of Fact:**
1. The November 7, 2018 Will of Lois Sherbert Shooter (the "Will") was admitted to probate on September 29, 2023 in Cause no. 23-45299-P, in Probate Court No. 1 of Montgomery County[,] Texas.
2. Adrienne Murphrey was appointed the Independent Executrix of the Estate of Lois Sherbert Shooter, Deceased, and is serving in that position.
3. Plaintiffs filed their Original Petition for Declaratory Judgment in Probate Court No. 1 of Montgomery County in cause 23-33580. This Court has jurisdiction over all of the parties.
4. Venue is proper in Montgomery County, Texas as the Will was admitted to probate in Montgomery County, and this Court has exclusive jurisdiction over matters pertaining to the Estate of Lois Sherbert Shooter, Deceased.
5. This case was tried to the bench, with the Honorable Kristin Bays sitting as Probate Court No. 1 of Montgomery County, Texas, by request of the Parties.
6. Ms. Shooter did not have any children.

11

7. Ms. Shooter's brother, Bill Sherbert, predeceased Ms. Shooter on April 19, 2023, less than two months before her death.

8. The residuary beneficiaries under the Will are Ms. Shooter's nieces, the daughters of her brother Bill Sherbert.

9. Gail Ann Friedman and John Jay Shooter are the children of John Josiah Shooter, Ms. Shooter's husband who predeceased her on September 11, 2014.

10. John Jay Shooter predeceased Ms. Shooter on April 17, 2021, leaving Jesse Shooter and Rachel Tamura as his descendants.

11. Prior to February 10, 2022, Lois Sherbert Shooter had a "Raymond James and Associates account ending in ****M386" (the "Raymond James Account").

12. In January 2022, Ms. Shooter opened a Transfer on Death Account at LPL Financial "Lois TOD Account ****2922" (LPL Lois TOD Account).

13. On February 10, 2022, Ms. Shooter signed and entered into a "Transfer on Death Account Agreement – Non-Retirement" for the LPL Lois TOD Account.

14. In the Transfer on Death Account Agreement – Non-Retirement, Ms. Shooter named her brother, Bill Sherbert, as the sole beneficiary to whom the LPL Lois TOD Account should be payable at death.

15. On February 10, 2022, Ms. Shooter signed an Account Transfer authorization for the transfer of assets from the Raymond James Account to the LPL Lois TOD Account.

16. In February and March 2022, Ms. Shooter transferred the assets in the Raymond James Account to her LPL Lois TOD Account in kind and closed the Raymond James Account. After that, there was no Raymond James and Associates account ****M386.

17. The monthly statements that Ms. Shooter received from LPL Financial thereafter clearly and prominently identified the LPL Lois TOD Account as "Lois TOD" in the upper right hand corner and as "TOD ACCOUNT" in the address block.

18. Lois Sherbert Shooter died on June 13, 2023, at the age of 87.

19. In Article II.B of her Will, Ms. Shooter stated:

B. Gift of Raymond James Account. I give all of my interest in my Raymond James and Associates account ending in ****M386 in equal shares to GAIL ANN FRIEDMAN[,] JOHN JAY SHOOTER, and BILL R. SHERBERT, provided, however, **no such gift shall be made if such account does not exist on the date of my death**; provided, further, I understand that **such account may pass outside the**

12

**provisions of my Will if, for instance**, I am holding such account as joint tenants with rights of survivorship with one or more other persons or if **such account is payable on death to one or more named beneficiaries**. If GAIL ANN FRIEDMAN, JOHN JAY SHOOTER or BILL R. SHERBERT fails to survive me, the gift to such individual shall instead pass to the descendants of such individual who survive me per stirpes; provided, further, if no descendant of such individual survive me, the gift shall lapse.

20. In Article III of her Will, Ms. Shooter stated:

I give all of the residue of my estate to BILL R. SHERBERT. If BILL R. SHERBERT fails to survive me, I give all of the residue of my estate to BILL R. SHERBERT's descendants who survive me per stirpes. If all of the beneficiaries listed above fail to survive me, then I give all of the residue of my estate to my heirs.

21. Ms. Shooter did not change her will after she opened the LPL Lois TOD Account and transferred the assets from the Raymond James Account into it.

22. Ms. Shooter did not make a gift of any particular asset or assets which were within the Raymond James and Associates Account ending in ****M386 – nor did she even make a gift with a reference to the contents of the Raymond James and Associates Account ending in ****M386 –but, instead, she made a gift of that account itself noting that the gift failed if, at the time of her death, the account did not exist.

23. Ms. Shooter made no provision for the gift described in Article II.B if the Raymond James and Associates Account ending in ****M386 did not exist at the time of her death (for instance, she did not make mention of any successor account being part of this gift as a catch all) other than to say, "no such gift shall be made if such account does not exist on the date of my death[."]

24. The Raymond James and Associates Account ending in ****M386 did not exist at the time of Ms. Shooter's death.

25. Because it did not exist on the date of Lois Shooter's death, she did not make a gift of it under Article II.B. of the Will per the express terms of the Will.

26. Further, even if the transfer of the assets of the Raymond James and Associates Account ending in ****M386 to the LPL Lois TOD Account means that the Raymond James and Associates Account ending in ****M386 and the LPL Lois TOD Account are the same, such that this Court should interpret that the two accounts are both covered by Article II.B. of the Will, then the provision of Article II.B.

13

of the Will which states, "I understand that such account may pass outside the provisions of my Will...if such account is payable on death to one or more named beneficiaries" governs this devise. The account had a named beneficiary, and although he predeceased Ms. Shooter, the transfer to him failed and then the account fell into Ms. Shooter's residuary estate (Article III of the Will) by operation of law. Thus, even if the LPL Lois TOD Account is considered to be the same as the Raymond James and Associates Account ending in ****M386, Ms. Shooter did not make a gift of it under Article II.B. of the Will per the express terms of the Will.

27. Ms. Shooter did not make a gift of the LPL Lois TOD Account to Gail Ann Friedman, John Jay Shooter and Bill R. Sherbert in Article II.B of the Will.

28. Gail Friedman, Jesse Shooter, and Rachel Tamura did not prove by a preponderance of the credible evidence that Ms. Shooter intended for the LPL Lois TOD Account to pass under Article II.B of her Will.

29. Because the attorneys' fees of Adrienne Murphrey, Independent Executrix of the Estate of Lois Sherbert Shooter, Deceased, have been paid from the Estate, the Court exercises its discretion not to make an award of those attorneys' fees.

30. Plaintiffs were not successful in their lawsuit.

31. Given the legitimacy of the dispute between these parties, it is not equitable or just to award attorneys' fees to either side.

**Conclusions of Law:**

1. This Court has jurisdiction of the parties and of the subject matter of this case.

2. Venue is proper in Montgomery County, Texas.

3. The Court's duty as the trier of facts and law in this case is to ascertain Ms. Shooter's intent in the Will.

4. There is no language or term in Ms. Shooter's Will that is subject to more than one reasonable interpretation or construction or is uncertain.

5. The Will is unambiguous.

6. Ms. Shooter's intent is apparent on the face of the Will.

7. From the language found within the four corners of the Will, Ms. Shooter's intent in Article II.B of her Will was to gift the Raymond James Account to Gail Ann Friedman, John Jay Shooter and Bill R. Sherbert (or their descendants) only if that account existed at the time of her death.

8. From the language found within the four corners of the Will, Ms. Shooter did not express an unqualified intent to leave any gift to Gail Ann Friedman, John Jay Shooter and Bill R. Sherbert (or their descendants) in Article II.B of the Will.

9. Ms. Shooter did not intend to make a gift of the LPL Lois TOD Account to Gail Ann Friedman, John Jay Shooter and Bill R. Sherbert (or their descendants) in Article II.B of the Will.

10. The intent and construction advocated by Gail Ann Friedman, Jesse Shooter and Rachel Tamura would require the Court to ignore the express language of the Will, essentially redrafting it and varying and adding to its unambiguous provisions.

11. Even considering the extrinsic evidence admitted at trial, Ms. Shooter did not intend to give the LPL Lois TOD Account to Gail Ann Friedman, John Jay Shooter and Bill R. Sherbert (or their descendants) in Article II.B of the Will.

12. Plaintiffs were not successful in their lawsuit.

13. It is not equitable or just to award attorneys' fees to Plaintiffs.

14. Plaintiffs shall take nothing on their claims.

15. The LPL Lois TOD Account passes pursuant to the residuary clause in Article III of Ms. Shooter's Will, and Adrienne Murphrey, Independent Executrix of the Estate [of] Lois Sherbert Shooter, Deceased, is entitled to a declaration accordingly.

16. Defendant shall recover all of her costs of court.

17. Any finding of fact that is a conclusion of law shall be deemed a conclusion of law. Any conclusion of law that is a finding of fact shall be deemed a finding of fact.

Standard of Review and Applicable Law

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Nguyen v. Yovan*, 317 S.W.3d 261, 269-70 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). When challenged, a trial court's findings of fact are not conclusive if there is a complete reporter's record on appeal. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). We review a trial court's findings of

15

fact under the same legal sufficiency of the evidence standard used when determining whether sufficient evidence exists to support an answer to a jury question. *See Catalina*, 881 S.W.2d at 297; *Nguyen*, 317 S.W.3d at 269-70.

An appellant may not challenge a trial court's conclusions of law for factual sufficiency, but we may review the legal conclusions drawn from the facts to determine their correctness. *See BMC Software*, 83 S.W.3d at 794. In an appeal from a bench trial, we review the conclusions of law de novo and will uphold them if the judgment can be sustained on any legal theory supported by the evidence. *See id.* "If the reviewing court determines a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal." *Id.*

When considering whether legally sufficient evidence supports a challenged finding, we must consider the evidence that favors the finding if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We view the evidence in the light most favorable to the trial court's findings and indulge every reasonable inference to support them. *Id.* at 822. We may not sustain a legal sufficiency, or "no evidence," point unless the record demonstrates (1) a complete absence of evidence of a vital fact; (2) that the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3)

16

that the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) that the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810. Because it acts as the fact finder in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). If the evidence at trial "would enable reasonable and fair-minded people to differ in their conclusions," we will not substitute our judgment for that of the fact finder. *City of Keller*, 168 S.W.3d at 822.

When it attacks the legal sufficiency of an adverse finding on an issue on which it has the burden of proof, the appellant must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In reviewing a "matter of law" challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* The point of error should be sustained only if the contrary proposition is conclusively established by the record. *Id.*

In a factual sufficiency review, we consider and weigh all of the evidence. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Arias v. Brookstone, L.P.*, 265

17

S.W.3d 459, 468 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). When the appellant challenges an adverse finding on an issue on which it did not have the burden of proof at trial, we set aside the verdict only if the evidence supporting the finding is so weak as to make the verdict clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176; *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 782 (Tex. App.—Houston [1st Dist.] 2011, no pet.). When it challenges an adverse finding on an issue on which it had the burden of proof at trial, the appellant must demonstrate on appeal that the adverse finding is against the great weight and preponderance of all the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242; *Reliant Energy Servs., Inc.*, 336 S.W.3d at 782.

Evidence admitted at trial is legally sufficient to support a judgment if it allowed "reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827. When reviewing legal sufficiency, the Court must "credit evidence that supports the verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006) (citing *City of Keller*, 168 S.W.3d at 827). The Court will sustain a legal sufficiency challenge if the evidence establishing a vital fact is no more than a scintilla. *See id.* at 793. "'[M]ore than a scintilla of evidence exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Ford Motor Co. v. Ridgway*, 135

18

S.W.3d 598, 601 (Tex. 2004) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). However, evidence offered to prove a vital fact constitutes no more than a scintilla when it "'is so weak as to do no more than create a mere surmise or suspicion of its existence,'" thus, "'in legal effect, is no evidence.'" *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

When reviewing the factual sufficiency of the evidence, this Court should "set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain*, 709 S.W.2d at 176. In examining whether the evidence is factually sufficient to support the findings made by the fact finder, the Court weighs all the evidence, both for and against the finding. *See Dow Chem. Co.*, 46 S.W.3d at 242.

An appellant must challenge each independent ground that fully supports a complained-of ruling or judgment. *Oliphant Fin. LLC v. Angiano*, 295 S.W.3d 422, 423-24 (Tex. App.—Dallas 2009, no pet.); *Reynolds v. Guido*, 166 S.W.3d 789, 795 (Tex. App.—Dallas 2005, pet. denied). If an appellant fails to assign error to an independent ground that fully supports the complained-of ruling or judgment, we must accept the validity of that ground, rendering harmless any error in the ground challenged on appeal. *Oliphant Fin. LLC*, 295 S.W.3d at 423-24. Thus, we must overrule a challenge to fact findings that underpin a legal conclusion or disposition when other fact findings that also support that legal conclusion or disposition are not

19

challenged. *Howeth Invs., Inc. v. City of Hedwig Vill.*, 259 S.W.3d 877, 889 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *see also Long v. Long*, 196 S.W.3d 460, 468-69 (Tex. App.—Dallas 2006, no pet.). Generally, an appellant must direct an attack on the sufficiency of the evidence at specific findings of fact and conclusions of law rather than at the judgment as a whole. *Shaw v. Cnty. of Dallas*, 251 S.W.3d 165, 169 (Tex. App.—Dallas 2008, pet. denied). Unchallenged findings are binding on an appellate court, but we may review specific findings being challenged if we are able to fairly determine them. *In re M.S.F.*, 383 S.W.3d 712, 716 (Tex. App.—Amarillo 2012, no pet.); *Shaw*, 251 S.W.3d at 169. The standards of review for claims of legal and factual sufficiency of the evidence govern appeals of non-jury trials on the merits. *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 445 (Tex. 1997). When a party appeals from a non-jury trial, it must complain of specific findings and conclusions of the trial court. *City of Dallas v. Pacifico Partners, Ltd.*, 289 S.W.3d 371, 373 (Tex. App.—Dallas 2009, no pet.). "[U]nchallenged findings of fact are binding on the appellate court unless the contrary is established as a matter of law, or if there is no evidence to support the finding." *City of Corpus Christi v. Taylor*, 126 S.W.3d 712, 717 (Tex. App.—Corpus Christi 2004, pet. withdrawn).

The Court must affirm a judgment if an appellant fails to challenge each independent ground that supports it. *Rockov-Medina v. Parghi*, No. 09-22-00091-

20

CV, 2024 Tex. App. LEXIS 7132, at *24 (Tex. App.—Beaumont October 3, 2024, no pet.) (mem. op.). If an appellant fails to assign error to an independent ground that fully supports the complained-of ruling or judgment, we must accept the validity of that ground, rendering harmless any error in the ground challenged on appeal. *Patton v. Echols*, No. 09-22-00334-CV, 2024 Tex. App. LEXIS 7751, at *51 (Tex. App.—Beaumont Oct. 31, 2024, no pet.) (mem. op.) (citation omitted).

<u>Issue and Arguments of Parties</u>

In Appellants only issue on appeal they contend the evidence is legally and factually insufficient to support the trial court's judgment declaring that the investment account at LPL passes pursuant to the residuary clause and not under the specific bequest made under Article II. B. of the Will. They argue that the trial court erred in concluding that the transfer of the investment account from one brokerage firm to another destroyed Lois's specific bequest of the Raymond James account to Appellants. And further that the trial court was "factually and legally wrong" to conclude that the account specified in the Will "did not exist[]" at the time Lois died. They argue the trial court erred in concluding that the movement of the Raymond James account to the LPL account constituted an "ademption." Appellants also argue that Lois intended to convey the substance of the Raymond James account to the Appellants and to her brother, or his heirs under the specific bequest in her Will, and

21

moving the money and securities to the LPL investment account did not limit or change that intent.

Appellee contends the trial court correctly decided the case and provided at least two independent grounds for its judgment, and the Appellants have only challenged one of those grounds on appeal. Appellee argues that at most the Appellants have only challenged the trial court's findings and conclusion that the Raymond James account did not exist at the time of Lois's death and have not challenged the independent ground that the LPL investment account was set up with a TOD beneficiary and precluded any gift under Article II. B. of the Will, and that when Bill predeceased Lois, the LPL TOD account passed into the residuary estate. Next, Appellee argues that the Appellants' general complaint about the Judgment and failure to specify which findings and conclusions they attack fail to present a justiciable issue on appeal, and the otherwise unchallenged findings are binding on appeal and independently support the Judgment. And Appellee contends Appellants failed to satisfy their burden to show the evidence is legally and factually insufficient.

In Appellants' Reply, they argue that their brief did challenge both grounds for the trial court's findings, because they argued that Lois did not intend to set up a TOD account at LPL and that it was set up by mistake. Alternatively, they contend the trial court's findings regarding the TOD were not a separate and independent

22

basis for the judgment because the TOD provision itself was of no relevance given Bill predeceased Lois and neither party argued the LPL investment account passed pursuant to the TOD. Further, they contend the appellate court can fairly determine from the Appellants' brief which findings and conclusions are being challenged even if the Appellants failed to specify which numbered findings and conclusions are being challenged. They argue Lois intended as stated in her Will for, not only the Raymond James account to pass to the Plaintiffs, but also the assets within that account to pass to the Plaintiffs, and Lois's movement of the assets in the Raymond James account to the LPL investment account "did not destroy the specific bequest to Appellants." They argue the evidence "conclusively established that Lois did not adeem the Raymond James account." And further they contend that the Judgment is against the great weight of the evidence and contrary to Texas precedence regarding ademption.

Analysis

In Appellants' sole issue stated in their brief on appeal, they challenge the factual and legal sufficiency of the evidence to support the trial court's judgment. That said, they have failed to specify which findings of fact or conclusions of law they challenge on appeal. We have nevertheless reviewed the substance of this point of error to determine, as best we can, which fact-findings and legal conclusions Appellants implicitly challenge. *See Storck v. Tres Lagos Prop. Owners Ass'n, Inc.*,

23

442 S.W.3d 730, 735 (Tex. App.—Texarkana 2014, pet. denied); *see also* Tex. R.

App. P. 38.9.

We conclude the only findings of fact and conclusions of law Appellants have

implicitly challenged are as follows:

Findings of Fact
…
22. Ms. Shooter did not make a gift of any particular asset or assets which were within the Raymond James and Associates Account ending in ****M386 – nor did she even make a gift with a reference to the contents of the Raymond James and Associates Account ending in ****M386 –but, instead, she made a gift of that account itself noting that the gift failed if, at the time of her death, the account did not exist.
23. Ms. Shooter made no provision for the gift described in Article II.B if the Raymond James and Associates Account ending in ****M386 did not exist at the time of her death (for instance, she did not make mention of any successor account being part of this gift as a catch all) other than to say, "no such gift shall be made if such account does not exist on the date of my death[."].
24. The Raymond James and Associates Account ending in ****M386 did not exist at the time of Ms. Shooter's death.
25. Because it did not exist on the date of Lois Shooter's death, she did not make a gift of it under Article II.B. of the Will per the express terms of the Will.
…
28. Gail Friedman, Jesse Shooter, and Rachel Tamura did not prove by a preponderance of the credible evidence that Ms. Shooter intended for the LPL Lois TOD Account to pass under Article II.B of her Will.

Conclusions of Law
…
7. From the language found within the four corners of the Will, Ms. Shooter's intent in Article II.B of her Will was to gift the Raymond James Account to Gail Ann Friedman, John Jay Shooter and Bill R. Sherbert (or their descendants) only if that account existed at the time of her death.
…

24

15. The LPL Lois TOD Account passes pursuant to the residuary clause in Article III of Ms. Shooter's Will, and Adrienne Murphrey, Independent Executrix of the Estate [of] Lois Sherbert Shooter, Deceased, is entitled to a declaration accordingly.

Appellee contends on appeal that the Appellants failed to challenge an independent ground for the trial court's final judgment which they argue arises from finding of fact 26, which states:

26. Further, even if the transfer of the assets of the Raymond James and Associates Account ending in ****M386 to the LPL Lois TOD Account means that the Raymond James and Associates Account ending in ****M386 and the LPL Lois TOD Account are the same, such that this Court should interpret that the two accounts are both covered by Article II.B. of the Will, then the provision of Article II.B. of the Will which states, "I understand that such account may pass outside the provisions of my Will...if such account is payable on death to one or more named beneficiaries" governs this devise. The account had a named beneficiary, and although he predeceased Ms. Shooter, the transfer to him failed and then the account fell into Ms. Shooter's residuary estate (Article III of the Will) by operation of law. Thus, even if the LPL Lois TOD Account is considered to be the same as the Raymond James and Associates Account ending in ****M386, Ms. Shooter did not make a gift of it under Article II.B. of the Will per the express terms of the Will.

We agree with Appellee that finding of fact 26 would independently support the trial court's judgment and Appellants failed to challenge it on appeal.

The unambiguous language in the Will stated that under Article II. B., the gift of the Raymond James account may pass outside the provisions of the Will if it is payable on death to one or more named beneficiaries. It is undisputed that when the LPL account agreement was signed by Lois, and upon the inception of the LPL

25

investment account, it was a "TOD Account." The account had a named beneficiary, Bill Sherbert, and although he predeceased Lois, the account was established as a TOD account and does not fall within Article II. B. Rather, as the trial court correctly concluded, because Bill predeceased Lois, the LPL account then would be governed by the residuary clause (Article III of the Will) by operation of law. Thus, even if the LPL Lois TOD Account is considered to contain the same stock or assets as the Raymond James Account ending in ****M386, Lois did not intend to make a gift of it under Article II. B. of the Will per the express terms of the Will and the unambiguous terms of the LPL account agreement.

We need not examine whether the trial court erred in concluding the Raymond James account "did not exist" at the time of Lois's death, or whether there was an "ademption" of that account as phrased by Appellants because even if Appellants are correct regarding their contention that the LPL account was just a substitute for the Raymond James account, the trial court's unchallenged findings regarding the LPL TOD account support the judgment. *See Oliphant Fin. LLC*, 295 S.W.3d at 423-24; *Howeth Inv., Inc.*, 259 S.W.3d at 889; and *Long*, 196 S.W.3d at 468-69.

That said, even if we accept Appellants' argument that they implicitly challenged finding of fact 26 or if, as Appellants argue, finding of fact 26 is not an independent ground supporting the judgment, we also conclude that the trial court's judgment is supported by legally and factually sufficient evidence.

As to the legal sufficiency challenge, Appellants failed to meet their burden to show that the record discloses a complete absence of evidence of a vital fact, or that the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, or that the evidence offered to prove a vital fact is no more than a mere scintilla, or that the evidence establishes conclusively the opposite of a vital fact. *City of Keller*, 168 S.W.3d at 810. After considering the evidence favorable to the findings made by the trial court and disregarding evidence contrary to the findings as we must, we conclude there is more than a scintilla of evidence to support the trial court's judgment. Additionally, as to factual sufficiency, after considering all the evidence in the record, we cannot say that the that the trial court's judgment is so contrary to the great weight and preponderance of the evidence as to be clearly wrong or unjust. *Id.*

In other uncontested findings of fact, the trial court concluded that Lois's Will is unambiguous, and the trial court correctly recited the language contained in Article II. B. and in Article III of Lois's Will. Furthermore, the trial court found that the LPL investment account established by Lois was a "TOD account." Each of these unchallenged findings is binding on appeal. *See Patton*, 2024 Tex. App. LEXIS 7751, at *51; *Shaw*, 251 S.W.3d at 169; and *City of Corpus Christi*, 126 S.W.3d at 717. In Article II. B., the unambiguous language of the Will provided that "no such gift shall be made if such account does not exist on the date of my death; provided,

27

further, I understand that such account may pass outside the provisions of my Will if, for instance, I am holding such account as joint tenants with rights of survivorship with one or more other persons or if such account is payable on death to one or more named beneficiaries." So, under the unambiguous language of II.B., the gift would not be made if the account did not exist or if such account is payable on death to one or more named beneficiaries. The trial court found the account did not exist at the time of Lois's death, and that the LPL account was a TOD account. Either finding would support the trial court's Judgment.

We expressly also reject Appellants' argument that the trial court's judgment is contrary to established precedent pertaining to "ademption." Appellants contend that like the facts in *Eckels v. Davis*, 111 S.W.3d 687 (Tex. App.—Forth Worth 2003, pet. denied), article II. B. contains a latent ambiguity. We disagree and find the Appellants reliance on *Eckels* is misplaced.

In *Eckels*, the Fort Worth Court of Appeals examined the issue of whether a financial management company's unilateral act of renumbering one of the accounts for bookkeeping purposes transformed the assets in that renumbered account into non-trust assets. The trust that was at issue in *Eckels* had specifically referenced the prior account number, and the account number was changed unilaterally without the knowledge of the decedent. *Id.* at 691. Here, unlike *Eckels*, the Raymond James account was intentionally moved by the decedent, Lois, and Lois moved her

28

securities and the cash in that account to an LPL account, she set up a new and totally different type of an account which was a "TOD account," and by its terms the new account would not pass as a gift under article II. B. of the Will. Lois specifically stated in her LPL TOD account how she wanted the assets in the new account to be distributed, and she personally filled out the account forms and named her brother as the beneficiary on death for the TOD account. Unlike *Eckels,* we conclude there is no ambiguity in the language Lois used in the Will.[2]

For all of the reasons explained above, we overrule Appellants' sole issue on appeal, and we affirm the trial court's judgment.

AFFIRMED.

LEANNE JOHNSON
Justice

Submitted on March 19, 2026
Opinion Delivered July 16, 2026

Before Johnson, Wright and Chambers, JJ.

---

[2] We also find the out-of-state authority cited by Appellant to be non-binding, unpersuasive, and distinguishable on the facts.